UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERNEST MCCOWN CREECH, on Behalf of
Himself and All Others Similarly Situated,

    Plaintiff,

  v.

EMERSON CLIMATE TECHNOLOGIES, INC.
and WHITE-RODGERS,

    Defendants.

_____/

CASE NO. 1:15-CV-00017
CLASS ACTION

JURY TRIAL DEMANDED

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Ernest McCown Creech ("**Plaintiff**"), individually and on behalf of all others similarly situated, sues Defendants, Emerson Climate Technologies, Inc. and White-Rodgers (collectively, "**Defendants**"), and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## <u>INTRODUCTION</u>

1.  This class action is brought for the benefit and protection of Plaintiff and Class Members who purchased a defective thermostat manufactured, marketed, distributed and sold by Defendants to obtain damages, restitution, injunctive, and other relief necessitated by Defendants' failure to adequately repair or replace defective thermostats.

2.  Defendants are responsible for the manufacture, marketing, distribution and sale of thermostats to consumers across the United States. Defendants tout themselves as leading the industry in innovative thermostat function and design, with wide recognition for their engineering capabilities, energy efficiency and safety for consumers.

3.     On April 30, 2014, after learning of a dangerous defect in their thermostats, Defendants issued a nationwide recall of approximately 740,000 Thermostats ("**Thermostats**") sold to consumers in the United States after it was determined that the alkaline batteries used in the Thermostats can leak into the Thermostat circuit board, posing a fire hazard ("**Recall**").

4.     Rather than replacing or repairing the defective Thermostats, Defendants initiated a Recall that consisted of mailing stickers to Plaintiff and Class Members.  The stickers were to be placed on the Thermostat battery compartment warning not to insert batteries into the Thermostat because it posed a fire hazard.

5.     This purported solution to the defective Thermostats is insufficient and has diminished the value of the Thermostats by eliminating one of their vital functions – the battery back-up.  The battery back-up in these Thermostats serves the essential purpose of preventing freezing or overheating in Plaintiff and Class Members' homes in the event of a power outage, and also supports energy efficiency.

6.     By mailing a sticker to place over the battery compartments of the defective Thermostats, rather than replacing or repairing the defective Thermostats, Defendants breached their recall obligations under the Thermostat warranties.  Additionally, the implementation of this insufficient Recall constitutes an unfair, deceptive, and unconscionable trade practice.

7.     The defective design of the Thermostats, combined with Defendants' past and ongoing failure to adequately remedy the defect, has proximately caused and continues to cause Plaintiff and Class Members to suffer economic damages because they purchased a product that: (a) has diminished value resulting from its inability to operate properly in the event of a power failure, which can lead to overheating and freezing of pipes in consumers' homes, along with decreased energy efficiency, and (b) requires modifications beyond those included in the Recall,

2

including, but not limited to, professional installation of a new thermostat by an HVAC specialist.

8.  Plaintiff brings this action on behalf of himself and a Class of approximately 740,000 consumers who purchased Defendants' Thermostats that were subject to the Recall.

## JURISDICTION AND VENUE

9.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00 and is a class action in which Members of the Class are citizens of a state different from Defendants.

10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District because Defendants:

    a.  are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, sale and recall of their products in this District;

    b.  conduct substantial business in this District; and,

    c.  are subject to personal jurisdiction in this District.

## PARTIES

11.  Plaintiff, Ernest McCown Creech, was at all times relevant to this matter a resident of the state of North Carolina, residing in Archer Lodge, Johnston County, North Carolina.

12.  Defendant, Emerson Climate Technologies Inc. ("**Emerson**"), is incorporated in Delaware with its principal place of business located at 1675 West Campbell Road Sidney, Ohio 45365-0669.  Emerson Climate Technologies, along with Defendant White-Rodgers, is

3

responsible for the manufacture, marketing, distribution, sale and Recall of the Thermostats at issue.

13. Defendant, White-Rodgers ("**White-Rodgers**"), is incorporated in Missouri with its principal place of business located at 8100 West Florissant, PO Box 36922, St. Louis, Missouri 63136-9022. White-Rodgers is a division of Emerson. White-Rodgers, along with Emerson, is responsible for the manufacture, marketing, distribution, sale and Recall of the Thermostats at issue.

## FACTS COMMON TO ALL CLASS MEMBERS

14. A thermostat is a temperature-sensitive switch that turns heating and cooling systems on and off when the temperature reaches a preset limit. This allows an air conditioning system to maintain a desired temperature by switching heating or cooling devices on or off, or by regulating the flow of air to maintain the correct temperature and ensure temperature stability.

15. Digital thermostats, including those included in the Recall, can be operated in both programmable and non-programmable modes. When in programmable mode, the digital thermostat can be operated with programmed temperatures for certain periods of the day to allow for energy conservation. These thermostats have separate programs for heating and cooling. For example, in the cooler months, consumers can program their thermostats to turn up the heat in the morning before work, turn it down while they are at work, and turn it up again when they return home. Likewise, in the warmer months, consumers can program their thermostats to turn down the air conditioning in the morning before work, turn it up while they are at work, and turn it down again when they return home. These programs are valuable features that conserve money and energy.

16. The Thermostats are digital and are powered by a system AC circuit. When operating on the system AC power, after a power outage, the clock will lose its setting, which

4

requires consumers to reset the Thermostat clock to maintain the programmed settings.  If the clock is not reset, then the Thermostat may run at the wrong time or the wrong temperature, or not run at all, which may lead to freezing or overheating of the home, as well as energy losses and increased energy costs.  In order to prevent freezing or overheating and to preserve energy efficiency, the subject Thermostats have a battery back-up, which is vital to the Thermostat's proper function as it assists in maintaining the current or programmed temperature in the home in the event of a power failure.

### THE INSUFFICIENT RECALL

17.  On April 30, 2014, Defendants issued a recall notice for four models of White-Rodgers digital Thermostats under one of the following brand names:  "COMFORTSENTRY," "DICO," "Emerson," "Frigidaire," "Maytag," "Nutone," "Partners Choice," "Rheem," "Ruud," "Unico," "Water Furnace," "Westinghouse," "White-Rodgers" or "Zonefirst."

18.  The Recall was instituted because the "alkaline batteries used in the thermostat can leak onto the circuit board posing a fire hazard."  See attached Exhibit A (Recall Notice).

19.  The Recall included approximately 740,000 units sold throughout the United States, and more than 400,000 sold in Canada.  The units included in the Recall were sold nationwide from January 2006 through December 2013 for approximately $30.00 to $70.00. There have been at least seven reports of burn damage to the Thermostats, with two involving property damage.

20.  The Thermostats included in the Recall are programmable and have a battery back-up. As mentioned above, the battery back-up system eliminates the need to reprogram thermostats after a power failure.  As shown in the below photograph of Plaintiff's

Thermostat, the battery back-up also "prevent[s] freezing or overheating" of the home in the event of a power failure:



21.     The Thermostats subject to the Recall were sold by Defendants with a five-year warranty.  Rather than honoring the warranty and replacing the Thermostats or repairing the defect, Defendants eliminated the battery back-up function.  Specifically, Defendants provided stickers to Plaintiff and Class Members who purchased Thermostats subject to the Recall, and directed them to place the stickers over the battery compartment as a warning not to use the battery back-up function:



**IMPORTANT SAFETY NOTICE**

**⚠ WARNING**
DO NOT INSTALL BATTERIES IN THIS THERMOSTAT. THIS CAN CAUSE A FIRE HAZARD.

When you registered with the White-Rodgers recall center, you were asked to verify that your thermostat did __not__ display the battery icon and you were requested to remove the two AA alkaline batteries.

The last step of the recall corrective action is to attach the enclosed, self adhesive, warning label to the battery compartment. This will prevent the accidental insertion of batteries in the future. If you have not removed the two AA alkaline batteries, please do so before applying the attached label.

Place the warning label as shown below. After attaching the label the battery door can be closed and the label will not be seen.

__Note:__ If the display of your thermostat goes blank shortly after the batteries are removed (this may take up to 90 seconds once the batteries are removed), your thermostat is powered by the batteries and is not affected by this recall.

Please contact White-Rodgers for assistance with the corrective action.

For more information, contact **1-888-624-1901**.
Or visit the White-Rodgers' website at: **http://www.regcen.com/1f8recall/**

This completes the corrective action for your White-Rodgers thermostat.

We appreciate your help and cooperation.

22. Under the warranty, Defendants were obligated to (a) repair the Thermostats so they retained the battery back-up function, at no charge to Plaintiff and Class Members, or (b)

replace the Thermostat and provide a comparable thermostat with a functional battery back-up, at no charge to Plaintiff and Class Members. Defendants have failed to satisfy these warranty obligations, opting instead to retain funds that should have been expended on the Recall.

23.     Plaintiff seeks injunctive relief including: (i) repairs to remove the dangerous condition and maintain the battery back-up function; (ii) replacement of the Thermostats in the absence of these repairs; and (iii) extension of warranty coverage covering the dangerous condition in the event of further defects.

24.     Defendants have previously issued a Recall for a similar fire hazard in their programmable thermostats.   On January 12, 2011, Defendants recalled several of their programmable thermostats because they constantly charged the backup AA batteries, which could cause the batteries to leak, resulting in a fire hazard. As a result, Defendants may have known, or should have known, of the defect in the Thermostats subject to the Recall, before selling the Thermostats to Plaintiff and Class Members.

### PLAINTIFF'S INDIVIDUAL ALLEGATIONS

25.     Plaintiff purchased three (3) model number 1F85-0422 Emerson Thermostats from eComfort.com on September 9, 2012 for a total of $230.85.   He paid $125.00 to an HVAC professional to install the Thermostats.

26.     Plaintiff purchased this particular model because, among other reasons, it had a battery back-up.  The purpose of the battery back-up, as indicated on the Thermostat (pictured above), was to "prevent freezing or overheating," in the event of a power outage.

27.     The Thermostats that Plaintiff purchased came with five-year warranties.

28.     On May 5, 2014, Plaintiff received a letter from eComfort.com regarding the Recall, which included his Emerson Thermostats.  The letter indicated that the Thermostat he purchased may be part of a recall issued by White-Rodgers.  See attached Exhibit B.

29.    On May 10, 2014, Plaintiff registered his Thermostats with the White-Rodgers recall center.

30.    On or around May 15, 2014, Plaintiff received a letter from White-Rodgers, indicating that he should affix an enclosed self-adhesive warning label stating "Warning, do not install batteries in this thermostat, this can cause a fire hazard," to the battery compartment on his Thermostat. The letter, included above, further indicated that the warning label would prevent accidental insertion of batteries in the future, and that the label completed the corrective action for his defective Thermostat.

31.    On May 10, 2014, and again on June 12, 2014, Plaintiff provided notice to eComfort.com that the Recall was unsatisfactory and insufficient. Upon his request, eComfort.com relayed Plaintiff's notice to White-Rodgers. In his correspondence, Plaintiff indicated the importance of the battery back-up function, and that consumers should not have to bear the expense or accept a lesser product because of the Thermostat's defect. Plaintiff also indicated his intention to bring a class action to remedy the damages caused by the insufficient Recall.

32.    Notwithstanding Plaintiff's notice of the insufficient Recall, White-Rodgers has not replaced or repaired Plaintiff's Thermostats, all of which remain without a battery back-up.

33.    Plaintiff would not have purchased the Thermostats, or would have paid less for them, had he known of the defect, lack of function and Defendants' subsequent insufficient corrective action.

## CLASS ACTION ALLEGATIONS

34.     Pursuant to Rules 23(a), (b)(3), (b)(2) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following persons ("**the Class**" or "**Class Members**"):

> All persons within the United States who purchased a Thermostat subject to the Recall issued by Emerson Climate Technologies and/or White-Rodgers on April 30, 2014.

The Class definition is subject to amendment as needed.

35.     Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff's counsel.

36.     Also excluded from this action are any claims for personal injury, wrongful death and/or emotional distress.  Members of the above-defined Class can be easily identified through Defendants' records.

### Numerosity

37.     The proposed Class is so numerous that individual joinder of all Members is impracticable.

38.     The subject recall involves approximately 740,000 Thermostats and, while the identities of Class Members are unknown at this time, such information can be readily ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class Members in a single action will provide substantial benefit to all parties and to the Court.

**Predominance of Common Questions of Law and Fact**

39.     Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members.   These common legal and factual questions include, but are not limited to, the following:

     a.   Whether the Thermostats are materially defective,

     b.   What are the material defects within the Thermostats;

     c.   Whether Defendants knew the Thermostats were and are materially defective before selling them to Plaintiff and Class Members;

     d.   Whether Defendants omitted and concealed material facts from their communications and disclosures to Plaintiff and Class Members regarding the defect inherent in the Thermostats;

     e.   Whether Defendants engaged in unfair, deceptive, and unconscionable practices in connection with the sale of the Thermostats;

     f.   Whether Defendants engaged in unfair, deceptive, and unconscionable practices in connection with the Recall of the Thermostats;

     g.   Whether Defendants breached their warranties on the Thermostats;

     h.   Whether Defendants have been unjustly enriched;

     i.   Whether, as a result of Defendants' misconduct, Plaintiff and Class Members have suffered damages and, if so, the appropriate amount of such damages; and,

     j.   Whether, as a result of Defendants' misconduct, Plaintiff and Class Members are entitled to declaratory and injunctive relief, or other relief, and, if so, the nature of such relief.

40. Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the Class as a whole. In particular, Defendants have failed to adequately repair or replace the uniformly defective thermostats, as described herein.

### Typicality

41. Plaintiff's claims are typical of the claims of the Members of the Class. Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiff and all Class Members have been similarly affected by Defendants' common course of conduct of failing to adequately repair or replace the uniformly defective Thermostats.

### Adequacy

42. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action.

### Superiority

43. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

    b. Individual joinder of all Class Members is impracticable;

    c. Absent a Class, Plaintiff and Class Members will continue to suffer harm as a result of Defendants' unlawful conduct;

d. Given the amount of individual Class Members' claims, few, if any, Class Members could afford to, or would, seek legal redress for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

e. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

f. Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other Class Members to protect their interests; and,

g. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused by Defendants.

44. Defendants implemented uniform procedures relating to the Recall, which resulted in uniform damage to Plaintiff and Class Members. As a result, Defendants have acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

45. Defendants' failure to implement an adequate repair for the defective Thermostats arises out of a common omission or failure to act, which has a uniform effect on Plaintiff and all Class Members. Plaintiff seeks preliminary and permanent injunctive relief and equitable relief

on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendants to discontinue their unlawful conduct.

46.     Because Plaintiff seeks injunctive and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Further, bringing individual claims would overburden the courts and would be an inefficient method of resolving the dispute at the center of this litigation.

### FIRST CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

48.     Defendants uniformly warranted all of the Thermostats for a period of five (5) years.  This express warranty became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and Class Members on the one hand, and Defendants on the other.

49.     Under the terms of the warranty, Defendants are obligated to repair or replace the defective Thermostats sold to Plaintiff and Class Members.  The express warranty was provided to Plaintiff and Class Members by Defendants, and specifically extended to the Thermostats purchased by Plaintiff and Class Members, including the battery back-up function of the Thermostats.

50.     Defendants breached the terms of the express warranty between the parties by failing to adequately repair or replace the Thermostats in a manner that conformed to the terms of the express warranty.  Defendants breached the express warranty by providing a sticker to

14

Plaintiff and Class Members to place over the battery compartments of their Thermostats, warning of a fire hazard, which eliminated the vital battery back-up function of the Thermostats.

51.     Defendants knew of their obligations under the warranty to repair or replace the Thermostats in the event of a defect in the Thermostats, including the defect described herein. Defendants, however, willfully refused to remedy the defect, including a repair of the defect or replacement of the Thermostat, as required under the warranty.

52.     Defendants' breach of the express warranty has directly and proximately caused Plaintiff and Class Members to suffer damages.

53.     Plaintiff and Class Members performed all conditions precedent under the contract between the parties.  Within a reasonable time of discovering Defendants' breach of express warranty, Plaintiff notified Defendants of the breach.  Despite notice and Defendants' knowledge of the breach, Defendants have failed and refused to honor the warranty.  Plaintiff and the Class have given Defendants a reasonable opportunity to cure their failures with respect to the warranty, but Defendants have not done so.

### SECOND CAUSE OF ACTION
### VIOLATION OF MAGNUSON-MOSS ACT, 15 U.S.C. §2301 ("MMWA")

54.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as if fully set forth herein. Plaintiff further incorporates by reference each and every allegation contained in his First cause of action as though fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of the Members of the Class.

56.     Plaintiff makes this claim under state express warranty law, as allowed under Section 2301(d)(1)(B) of the MMWA.  With respect to that state claim, Defendants' warranty requires repair or replacement of the Thermostats, as alleged herein.

57.     The Thermostats are consumer products, as defined in 15 U.S.C. §2301(1).

15

58.     Plaintiff and Class Members are consumers, as defined in 15 U.S.C. §2301(3).

59.     Defendants are suppliers and warrantors, as defined in 15 U.S.C. §§ 2301(4) and (5).

60.     Defendants' express warranty is an affirmation of fact or written warranty within the meaning of 15 U.S.C. §2301(6).

61.     In its capacity as a warrantor, and by the conduct described herein, Defendants' attempt to limit the express warranty in a manner that excludes coverage of the defective Thermostats is unconscionable and Defendants' effort to disclaim or otherwise limit liability for the defective Thermostats is null and void.

62.     Defendants breached the express warranty by their failure to repair or replace, free of charge, the defective Thermostats.  By Defendants' conduct as described herein, including their knowledge of the defective Thermostats and their action and inaction in the face of that knowledge, Defendants have failed to comply with their obligations under their written warranties and representations.

63.     Defendants' breach of the express warranty deprived Plaintiff and Class Members of the benefit of their bargain.

64.     By breaching the express written warranties in failing to adequately repair or replace the defective Thermostats, Defendants have violated the statutory rights of Plaintiff and Class Members pursuant to the MMWA, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and Class Members.

65.     All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.  Plaintiff notified Defendants in writing of his claim and his intention to act on behalf of a

16

Class. Defendants have been afforded a reasonable opportunity to cure their breach of written warranty.

66.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs), computed on the basis of all claims to be determined in this suit.

67.     As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial.

68.     Plaintiff and Class Members are entitled to revoke their acceptance of the Thermostats, obtain damages and equitable relief, and obtain attorney fees and costs under 15 U.S.C. § 2301.

<div align="center">

**THIRD CAUSE OF ACTION**
**VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT**
**OHIO REV. CODE ANN. § 1345.01, *et seq.*  ("OCSPA")**

</div>

69.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the Members of the Class.

71.     The OCSPA is codified at OHIO REV. CODE ANN. § 1345.01, *et seq.*  The statute is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]." OHIO REV. CODE ANN. § 1345.01(A). Accordingly, the conduct at issue in this case falls within the scope of the OCSPA.

72.     The OCSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions. OHIO REV. CODE ANN. § 1345.02(A). The OCSPA further

provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. OHIO REV. CODE ANN. § 1345.09.

73.     Defendants' actions constitute unfair and deceptive practices that violate OCSPA §1345, *et seq.*, as the acts and practices are materially deceptive and misleading, deceived Plaintiff and have a broad impact on consumers at large, including the other Members of the Class.

74.     Defendants have engaged in unfair, deceptive, and unconscionable practices by: (1) marketing and selling Thermostats with defects that cause lack of dependable operation through a faulty battery back-up meant to assist in preventing freezing or overheating of homes in the event of power outages; and (2) implementing an insufficient Recall that prevents Plaintiff and Class Members from receiving the full benefits of their Thermostats by failing to repair the known defects and risks.

75.     Ohio courts have consistently held that a manufacturer's failure to repair a defect covered by a warranty can amount to a violation of the OCSPA.  Defendants' alleged violations of the OCSPA are substantially similar to the acts or practices of defendants in the following cases:

  a.  In *Layne v. McGowen*, 1995 WL 316233, at *5-6 (Ohio App. 2 Dist. 1995) ("*Layne*"), the court held that the defendant's failure to honor an express warranty was a violation of the OCSPA, where the defendant failed to fix, replace or repair the defective product.

  b.  In *Brown v. Lyons,* 43 Ohio Misc. 14, 19–20, 332 N.E.2d 380 (C.P.1974) ("*Brown*"), the court held that a "[f]ailure by a supplier in connection with a

consumer transaction to honor express warranties, constitutes deceptive acts and practices in violation of the Ohio Consumer Sales Practices Act;"

    c.   In *Lump v. Best Door and Window, Inc.*, 2002 WL 462863 (Ohio App. 3 Dist. 2002), citing *Layne* and *Brown*, the court held that the defendant's failure to honor an express warranty was a violation of the OCSPA.

76.    In each of the above cases, which are available for public inspection, the defendant's actions of failing to honor express warranties were declared deceptive under the OCSPA.  As a result, Defendants in this action were on notice that their alleged acts or practices may constitute violations of the OCSPA.

77.    Plaintiff and Class Members would not have purchased the Thermostats, or would have paid less for them, had they known of the defect and Defendants' subsequent insufficient corrective action.

78.    Defendants acted in the face of prior notice that their conduct was deceptive, unfair, or unconscionable.

79.    As a direct and proximate result of Defendants' violations of the OCSPA, Plaintiff and Class Members have been injured.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

80.    Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the Members of the Class.

82.    Plaintiff and Class Members conferred a benefit on Defendants when they purchased the Thermostats.  These Thermostats were purchased with a warranty from

Defendants, which Class Members reasonably expected would be honored in the event of a defect.

83. Plaintiff and Class Members paid for the Thermostats, which were warranted against the subject defects, on the condition that the Thermostats would be free from such defects, and if a defect did occur, then the Thermostats would be properly repaired or replaced under the warranty.

84. Upon information and belief, under the warranty, Defendants were obligated to (a) repair the Thermostats so they retained the battery back-up function, at no charge to Plaintiff and Class Members, or (b) replace the Thermostat and provide a comparable thermostat with a functional battery back-up, at no charge to Plaintiff and Class Members. However, Defendants have failed to satisfy these warranty obligations, opting instead to retain funds that should have been expended on the Recall.

85. Defendants have been unjustly enriched in retaining funds derived from their failure to repair or replace the defective Thermostats. Rather than repair or replace the defective Thermostats, and afford Plaintiff and Class Members the value that they bargained for, Defendants have instead eliminated the vital battery back-up function of the Thermostats by providing a warning sticker to consumers that proscribes and nullifies use of this function.

86. At the expense of Plaintiff and Class Members, Defendants have benefitted as a direct result of failing to repair or replace the Thermostats by retaining funds that should have been spent to repair or replace the Thermostats. Plaintiff and Class Members have been damaged as a result of Defendants' unjust enrichment because they have not received the benefit of the Thermostat warranty, and would not have purchased the Thermostats on the same terms or

for the same price had they known of the defect in the Thermostats or that the warranty accompanying the Thermostats would not cover the defect.

87.     Defendants' retaining of revenues that should have been spent on repairing or replacing the defective Thermostats was unjust and inequitable because the Thermostats were defective in design or manufacture, are not fit for their ordinary or intended use, and are not able to perform in accordance with the reasonable expectations of the ordinary consumer.

88.     Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit.

89.     Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and putative Class Members, pray for a judgment:

a.   Determining that this action is a proper class action and certifying the Class, as defined herein;

b.   Appointing Plaintiff as Class Representative;

c.   Appointing the undersigned as Class Counsel;

d.   Enjoining Defendants from continuing to violate the OCSPA;

e.   Finding Defendants liable to Plaintiff and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

f.   Awarding statutory damages as appropriate;

g. Awarding pre- and post-judgment interest;

h. Awarding Plaintiff and Class Members attorney fees and all litigation costs;

i. Awarding Plaintiff and Class Members such other relief as may be just and proper;

j. Awarding compensatory damages against Defendants in favor of Plaintiff and the Class for damages sustained as a result of Defendants' wrongdoing; and,

k. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts triable by jury.

Dated: January 13, 2015

Respectfully submitted,

*/s/ Robert R. Sparks*
Robert R. Sparks (0073573)
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
*rr.sparks@strausstroy.com* Email

and

MORGAN & MORGAN
COMPLEX LITIGATION GROUP

Rachel Soffin (Florida Bar No. 018054)
Jonathan B. Cohen (Florida Bar No. 0027620)
201 N. Franklin Str., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
rsoffin@forthepeople.com
jcohen@forthepeople.com

*Pending Pro Hac Vice Admission*

3897555_1.doc

22