IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERNEST McCOWN CREECH, on behalf of himself and all others similarly situated, :

Plaintiff, :

v.

EMERSON CLIMATE TECHNOLOGIES, INC., *et al.*, :

Defendants.

Case No. 3:15-cv-14

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT (DOC. #17); SAID PLEADING TO BE FILED WITHIN SEVEN DAYS; OVERRULING AS MOOT THE REMAINDER OF DEFENDANTS' MOTION TO DISMISS UNDER CIVIL RULE 12(b)(6), WHICH THE COURT HAS CONVERTED TO A MOTION FOR SUMMARY JUDGMENT (DOC. #8), AND DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS FROM THE CLASS ACTION COMPLAINT (DOC. #9)

---

After Defendants Emerson Climate Technologies, Inc., and White-Rodgers, issued recall notices for four models of digital thermostats, but failed to repair or replace the defective thermostats, Plaintiff Ernest McCown Creech filed suit on behalf of himself and all others similarly situated. Creech alleged breach of express warranty, a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, a violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, *et seq.*, and unjust enrichment.

This matter is currently before the Court on Plaintiff's Motion for Leave to File Amended Class Action Complaint. Doc. #17. For the reasons set forth below, the Court sustains that motion. The filing of the Amended Class Action Complaint will render moot the other pending motions, which were directed at the original Class Action Complaint.

## I. Background and Procedural History

In 2014, Defendants issued a nationwide recall of approximately 740,000 programmable digital thermostats. Those thermostats have a battery back-up function that maintains the digital clock so that they do not need to be re-programmed in the event of a power outage. In addition, the battery back-up function maintains a reading of the room's temperature and illuminates the display panel during a power outage. Defendants issued the recall after receiving seven reports that alkaline batteries had leaked into the circuit board, posing a fire hazard.

Plaintiff Ernest McCown Creech owned three of the thermostats that were subject to the recall. To remedy the alleged defect, Defendants instructed consumers who owned the defective thermostats to permanently remove the batteries, and place a sticker over the battery compartment, warning of the fire hazard. Plaintiff alleges that this remedy was insufficient, and that the warranty required Defendants to instead repair or replace the defective thermostats. He

contends that the remedy diminished the value of the thermostats by eliminating the battery back-up function.

As noted above, Plaintiff's Class Action Complaint, Doc. #1, alleged four claims: (1) breach of express warranty; (2) a violation of the MMWA; (3) a violation of the OCSPA; and (4) unjust enrichment. On July 23, 2015, the Court issued a Decision and Entry, Doc. #16, sustaining Defendants' motion to dismiss Plaintiff's unjust enrichment claim.

With respect to the three other claims, Defendants argued that Plaintiff had failed to state a claim upon which relief could be granted. The warranty at issue required repair or replacement only in the case of a *manufacturing* defect. Plaintiff, however, had alleged only a *design* defect. Defendants therefore argued that their failure to repair or replace the defective thermostats could not form the basis for any kind of warranty claim. In response, Plaintiff argued that the warranty cited by Defendants was not the applicable warranty. Because the Court could not resolve this issue without looking at documents outside of the pleadings, it converted the remainder of the motion to dismiss into a motion for summary judgment, and gave the parties the opportunity to conduct limited discovery about the warranty, and to submit additional materials for the Court's consideration. Doc. #16.

Instead of submitting additional information about the applicable warranty, Plaintiff instead filed a Motion for Leave to File Amended Class Action Complaint, Doc. #17. The proposed Amended Class Action Complaint asserts similar causes of action—breach of express warranty, a violation of MMWA, and a violation of

OCSPA—but now bases these claims on a manufacturing defect rather than a design defect. In his motion, Plaintiff states that he has retained an expert who has opined that the problems with the thermostats were likely caused by defective manufacturing instead of defective design.[1] The proposed Amended Class Action Complaint also contains additional factual allegations about the battery back-up function of the thermostats that were subject to recall.

## II. Plaintiff's Motion for Leave to File Amended Class Action Complaint (Doc. #17)

### A. Federal Rule of Civil Procedure 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend a pleading "when justice so requires." Reasons to deny leave to amend may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Analysis

Here, Defendants argue that Plaintiff's motion should be denied because the proposed amendment would be futile. A proposed amendment is futile if it could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[1] Plaintiff notes that he is not required to provide expert witness testimony at this stage of the litigation, but offers to submit a declaration of this expert witness if the Court so requests. The Court sees no need for that at this time.

*Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). According to Defendants, the factual allegations in the Amended Class Action Complaint do not adequately support a claim of a manufacturing defect. Therefore, the warranty does not apply, rendering Plaintiff's three remaining claims subject to dismissal.

Under Ohio law, a manufacturing defect exists when, at the time a product leaves the manufacturer's control, it deviates in some material way from its intended design, or from otherwise identical units manufactured to the same design specifications. Ohio Rev. Code § 2307.74. This is exactly what Plaintiff now alleges—that, at the time the thermostats left the manufacturer's control, they "deviated in a material way from their design specifications," and that this manufacturing defect, combined with Defendants' failure to adequately remedy it, has caused him to suffer economic damages. Doc. #17-1, PageID#179.

Defendants maintain that this is nothing more than a "formulaic recitation of the elements," a legal conclusion that fails to satisfy the applicable pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a complaint must contain enough facts to render the claim "plausible"). They correctly note that Plaintiff has not identified any specific manufacturing defect. He simply alleges that "a manufacturing defect" caused the batteries to leak and pose a fire hazard, and that "[i]nadequate assembly, including missing, misplaced or improper components in the Thermostats during manufacture

are examples of manufacturing defects that *may* have caused" this to happen. Doc. #17-1, PageID##183, 192, 194 (emphasis added).

Defendants maintain that these allegations are insufficient to support the existence of a manufacturing defect, without which the remaining warranty claims fail as a matter of law. They insist that, because the recall was issued as the result of a *design* defect, they are not required to repair or replace the defective thermostats. However, as Plaintiff correctly notes, Defendants' characterization of the nature of the defect is not dispositive at this stage of the litigation. The relevant question is whether Plaintiff had alleged sufficient facts to support a plausible claim of a manufacturing defect.

Citing *Marshall v. Hyundai Motor America*, 51 F. Supp.3d 451, 467 (S.D.N.Y. 2014), Plaintiff notes that, as is typical, further details concerning the exact nature of the alleged manufacturing defect are in Defendants' exclusive control, making them difficult to ascertain prior to discovery. Therefore, the fact that Plaintiff has not yet identified exactly *how* the defective thermostats deviated from their intended design is not necessarily surprising. Notably, prior to moving for leave to amend in this case, Plaintiff went the extra mile to hire an expert witness to determine whether a manufacturing defect could have prompted the recall. That expert has allegedly opined that the defect at issue was likely caused by negligent manufacturing rather than negligent design.

Under these circumstances, the Court cannot say that Plaintiff's proposed Amended Class Action Complaint is futile. At this stage of the litigation, Plaintiff's

factual allegations understandably are not very detailed, but they are sufficient to state a plausible claim of a manufacturing defect, which could trigger Defendants' duty, under the warranty, to repair or replace the defective thermostats.

Defendants also complain that it is not clear whether Plaintiff is alleging that *all*, or only *some*, of the 740,000 recalled thermostats contain a manufacturing defect. They maintain that, if Plaintiff alleges that *all* of the thermostats are defective, this is more likely to be a design defect than a manufacturing defect. *See Bruce Martin Constr., Inc. v. CTB, Inc.*, No. 1:10cv205, 2012 WL 6203112, at *4 (E.D. Mo. Dec. 12, 2012) (noting that problems that plague each and every one of the products at issue are more likely to be the result of a design defect). But this is not always true. As the court explained in *Huffman v. Electrolux N.A., Inc.*, 961 F. Supp.2d 875 (N.D. Ohio 2013):

> Generally speaking, I would agree that a uniform malfunction across a large number of appliances would seem to indicate a bad design rather than mistaken assembly. However, contrary to defendant['']s contention, a large number of bad machines does not, *ipso facto*, preclude a manufacturing defect theory. It is not implausible that discovery or expert analysis could reveal that an individual on an assembly line used improper parts or technique in manufacturing a large number of washing machines.

*Id.* at 884.

In this case, it is undisputed that *some* defect caused the batteries to leak onto the circuit board of the thermostats, posing a fire hazard, and prompting a nationwide recall. Whether that recall was prompted by a design defect or a manufacturing defect remains to be seen. Although Defendants make a strong

argument that a design defect is to blame, it is also plausible that each of the thermostats subject to the recall was defectively manufactured.

Plaintiff alleges that the thermostats "deviated in a material way from their design specifications or performance standards," and "included a manufacturing defect that caused batteries in the Thermostats to leak and pose a fire hazard." Doc. #17-1, PageID#183. The Court finds that Plaintiff has stated a plausible claim of a manufacturing defect. Moreover, although not mentioned in the proposed Amended Complaint, Plaintiff has already engaged an expert witness who opines that the problem was likely caused by a manufacturing defect.

Defendants also argue that, to the extent that Plaintiff is alleging that only *some* of the thermostats were negligently manufactured, Plaintiff has failed to adequately allege that this manufacturing defect was present in the models recalled, or in the specific thermostats that Plaintiff purchased. The Court disagrees. Read as a whole, Plaintiff's proposed Amended Class Action Complaint ties the recall to the alleged manufacturing defect, and alleges that the thermostats he purchased were among the models that were recalled.

The Court concludes that the allegations in the proposed Amended Class Action Complaint state a plausible claim of a manufacturing defect, providing a sufficient basis for Plaintiff's warranty claims at this stage of the litigation. The Court does not find the proposed amendment to be futile. Accordingly, the Court SUSTAINS Plaintiff's Motion for Leave to File Amended Class Action Complaint,

Doc. #17. Plaintiff shall file the Amended Class Action Complaint within seven days of the date of this Decision and Entry.

## III. Other Pending Motions

Given that the Court has sustained Plaintiff's Motion for Leave to File Amended Class Action Complaint, the other pending motions, which are directed to the original Class Action Complaint, are OVERRULED AS MOOT. These include the remainder of Defendants' Motion to Dismiss, Doc. #8, which the Court converted into a motion for summary judgment, and Defendants' Motion to Strike Class Allegations from the Class Action Complaint, Doc. #9.

## IV. Conclusion

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion for Leave to File Amended Class Action Complaint, Doc. #17. Said pleading shall be filed by Plaintiff within seven days of this Decision and Entry. The Court OVERRULES AS MOOT the remainder of Defendants' Motion to Dismiss, Doc. #8, which the Court converted into a motion for summary judgment, and Defendants' Motion to Strike Class Allegations from the Class Action Complaint, Doc. #9.

Date: October 28, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE