IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERNEST McCOWN CREECH, on          :
behalf of Himself and All Others
Similarly Situated,

        Plaintiff,          :          Case No. 3:15-cv-14

        v.                                  JUDGE WALTER H. RICE

EMERSON ELECTRIC CO., *et al.,*     :

        Defendants.

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION (DOCS. ##77, 94); PARTIES TO FILE JOINT
REVISED RULE 26(f) REPORT NO LATER THAN MAY 6, 2019;
CONFERENCE CALL SET FOR MAY 13, 2019 AT 4:30 P.M. EDT

---

Plaintiff, Ernest McCown Creech, on behalf of himself and all others similarly

situated, filed suit again Emerson Electric Company ("Emerson"), and White-

Rodgers, a division of Emerson, challenging the recall of four models of digital

thermostats manufactured, marketed, distributed and sold by Defendants, and the

allegedly inadequate recall remedy that followed. This Court's jurisdiction arises

under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

In his Second Amended Class Action Complaint, Doc. #50, Creech asserts

four claims: (1) breach of express warranty; (2) a violation of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301, *et seq.*; (3) a violation of the Missouri

Merchandising Practices Act ("MMPA"), Mo. Stat. § 407.020, *et seq.*; and (4)

unjust enrichment. He seeks actual damages, statutory damages, attorneys' fees and costs, in addition to injunctive and declaratory relief.

This matter is currently before the Court on Plaintiff's Motion for Class Certification, Docs. #77, 94.[1] Plaintiff asks the Court to certify three classes, appoint him as class representative, and appoint Rachel Soffin and Jonathan Cohen as class counsel. The Court held a hearing on Plaintiff's motion on April 9, 2018.

## I.  Background and Procedural History

In September of 2012, Ernest McCown Creech, a North Carolina resident, purchased three digital, programmable thermostats online from eComfort. Doc. #94-11, PageID##4489-90. They were manufactured by Defendant White-Rodgers, a division of Emerson Electric Co., both incorporated in Missouri. Creech testified that he bought these particular thermostats because they were programmable, had a big display and a blue-tone screen. In addition, because he lived in an area where power failures were common, he wanted a thermostat with a battery back-up. Doc. #77-14, PageID##2468-71. With the battery back-up, the thermostat owner need not reset the clock or reprogram the thermostat after a power outage. In addition, the battery back-up allows the room temperature to still be measured and displayed during a power outage. These White-Rodgers thermostats came with a 5-year warranty. Doc. #94-4, PageID##4433-37.

---

[1]  Plaintiff filed a sealed motion for class certification at Doc. #77. A redacted copy of the same motion is filed at Doc. #94.

Plaintiff alleges that, under the warranty, Defendants were obligated to repair or replace any defective thermostats, or refund the purchase price.

On April 30, 2014, the Consumer Product Safety Commission issued a recall notice for approximately 740,000 White-Rodgers thermostats sold in the United States, alerting consumers to a potential fire hazard. Although four models of thermostats were subject to the recall, not all of these thermostats posed a fire risk. All four models are capable of being powered in one of three ways: (1) battery only; (2) through a C-wire in the furnace or air conditioning system; or (3) through a C-wire with a battery backup. The fire hazard affected *only* the third group of thermostats—those powered through a C-wire with a battery backup.

The Recall Notice stated that "[t]he alkaline batteries used in the thermostat can leak onto the circuit board posing a fire hazard." There were seven reports of burn damage to the thermostats, including two reports of minor property damage. As for the remedy, the Recall Notice stated that "[c]onsumers should check thermostats for battery icon on the left side of the blue lighted screen[;] if the battery icon is not shown, contact White-Rodgers to receive a free repair or a replacement thermostat." Doc. #94-3, PageID##4428-29.

Very few people responded to this Recall Notice. In fact, only about 5,500 thermostat owners registered for the recall, a participation rate of less than 1%. Doc. #77-4, PageID##2090. Of those who registered, 1,586 were given replacement thermostats. The remaining 3,870 were given a "sticker kit." Doc. #77-7, PageID#2188. They were instructed to remove batteries from the

thermostat and place a sticker over the battery compartment, warning them not to insert batteries because of the fire hazard. Doc. #50, PageID#588.

Ernest Creech was among those who registered for the recall and was given a sticker kit. On May 5, 2014, Creech received a notice of the recall from eComfort, indicating that the thermostats that he had purchased may be subject to the recall. Doc. #50-2, PageID#615. On May 10, 2014, Creech contacted the recall center. When he received the sticker kit, he expressed his dissatisfaction with this proposed remedy, both to eComfort and to Real Time Results, the third party retained by White-Rodgers to manage the recall. Doc. #94-5, PageID##4439-43. He complained that removal of the batteries essentially eliminated the battery back-up feature of the thermostats.

When White-Rodgers failed to provide Creech with free repairs or replacements, he filed suit on behalf of himself and all others similarly situated.[2] The Second Amended Class Action Complaint asserts claims for: (1) breach of express warranty; (2) violation of the Magnuson-Moss Warranty Act; (3) violation of the Missouri Merchandising Practices Act; and (4) unjust enrichment. It seeks money damages, along with injunctive and declaratory relief.

---

[2]  Creech filed suit in the United States District Court for the Southern District of Ohio, because he mistakenly believed that Emerson Climate Technologies, Inc., whose principal place of business is in Sidney, Ohio, was responsible for the manufacture, marketing, distribution, sale and recall of the thermostats. This error was rectified when the Second Amended Complaint was filed, replacing Emerson Climate Technologies, Inc., with Emerson Electric Co.

4

This matter is currently before the Court on Plaintiff's Motion for Class

Certification, Docs. ##77 and 94. Plaintiff asks the Court to certify three classes:

(1)     Nationwide Consumer Protection Law Class: During the fullest
        period allowed by law, all persons within the United States who
        purchased and still possess a Thermostat subject to the Recall
        issued by Defendants on April 30, 2014. The proposed Class
        includes, without limitation, all persons or entities that
        Defendants have identified as owning or possessing
        Thermostats that are subject to the Recall, or who Defendants
        have otherwise determined are entitled to participate in the
        Recall. The proposed Class also includes, without limitation, all
        persons or entities that own or possess Thermostats that are
        within the applicable warranty period.

                            *or, in the alternative,*

        Multi-State Consumer Protection Law Class: During the fullest
        period allowed by law, all persons in Alaska, Arkansas,
        California, Connecticut, Delaware, District of Columbia, Florida,
        Hawaii, Illinois, Massachusetts, Michigan, Missouri, Nebraska,
        New Jersey, New York, Ohio, Rhode Island, Vermont,
        Washington and Wisconsin who purchased and still possess a
        Thermostat subject to the Recall issued by Defendants on April
        30, 2014. The proposed Class includes, without limitation, all
        persons or entities that Defendants have identified as owning or
        possessing Thermostats that are subject to the Recall, or who
        Defendants have otherwise determined are entitled to
        participate in the Recall. The proposed Class also includes,
        without limitation, all persons or entities that own or possess
        Thermostats.

(2)     Express Warranty Class: During the fullest period allowed by
        law, all persons in Alaska, California, Colorado, Iowa, Maine,
        Missouri, New Jersey, North Carolina, Oklahoma and Texas,
        who purchased and still possess a Thermostat subject to the
        Recall issued by Defendants on April 30, 2014. The proposed
        Class includes, without limitation, all persons or entities that
        Defendants have identified as owning or possessing
        Thermostats that are subject to the Recall, or who Defendants
        have otherwise determined are entitled to participate in the
        Recall. The proposed Class also includes, without limitation, all

persons or entities that own or possess Thermostats that are within the applicable warranty period.

(3)    <u>Unjust Enrichment Class</u>: During the fullest period allowed by law, all persons in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Hawaii, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia and Wisconsin who purchased and still possess a Thermostat subject to the Recall issued by Defendants on April 30, 2014. The proposed Class includes, without limitation, all persons or entities that Defendants have identified as owning or possessing Thermostats that are subject to the Recall, or who Defendants have otherwise determined are entitled to participate in the Recall. The proposed Class also includes, without limitation, all persons or entities that own or possess Thermostats.

Doc. #94, PageID##4360-61.[3]

Excluded from these classes are: (1) Defendants, their employees, agents and assigns; (2) any members of the judiciary to whom this case is assigned, their Court staff; (3) Plaintiff's counsel; (4) any claims for personal injury, wrongful death or emotional distress; (5) the approximate 1,500 consumers who received non-defective thermostats as a remedy.

Plaintiff is seeking class certification under Fed. R. Civ. P. 23(b)(2). After the Motion for Class Certification was fully briefed, *see* Docs. ##81, 86, the Court held oral argument.

_____

[3]   Plaintiff is not seeking class certification on the Magnuson-Moss Warranty Act claim.

## II.    Fed. R. Civ. P. 23

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  The party seeking class certification bears the burden of proving that certification is warranted.  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

Class actions are governed by Federal Rule of Civil Procedure 23, which provides, in part, as follows:

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting each of these four prerequisites, the party seeking class certification must satisfy the requirements of one of the subsections of Rule 23(b).  Subsection (b) states:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Here, Plaintiff seeks certification under Rule 23(b)(2), which requires him to show that Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."


III.    **Analysis**

Before certifying a class, a district court must conduct a "rigorous analysis" of Rule 23's requirements. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-1079 (6th Cir. 1996) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). When

certification of more than one class is sought, each class must independently satisfy the requirements of Rule 23(a) and (b).  *Ann. Manual Complex Litig.* (Fourth) § 21.23.  As previously noted, Plaintiff seeks certification of three possible classes: (1) a Nationwide Consumer Protection Law Class or, in the alternative, a Multi-State Consumer Protection Law Class; (2) an Express Warranty Class; and (3) an Unjust Enrichment Class.

## A. Alternative Multi-state Consumer Protection Class and Unjust Enrichment Class

Two of these proposed classes require little discussion.  As an alternative to a Nationwide Consumer Protection Class, Plaintiff, Ernest Creech, seeks to certify a Multi-State Consumer Protection Class consisting of individuals in Alaska, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington and Wisconsin, who purchased and still possess a Thermostat that was subject to the White-Rodgers recall.

Nevertheless, "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  Creech, a North Carolina resident, is not a member of the alternative Multi-State Consumer Protection Class. Accordingly, he cannot fairly and adequately protect the interests of this class or serve as the class representative.

Plaintiff also asks the Court to certify an Unjust Enrichment Class. Defendants note, however, that the Court already dismissed Creech's own unjust enrichment claim. The Court held that Ohio law requires privity between the consumer and the manufacturer. Because Creech purchased his thermostats from eComfort, a third-party retailer, and not from White-Rodgers, there is no direct economic transaction to support a claim of unjust enrichment. Doc. #16, PageID##158-60.

Although the Court dismissed Plaintiff's unjust enrichment claim with prejudice, he nevertheless reasserted it in the Second Amended Class Action Complaint. At oral argument, counsel for Plaintiff suggested, for the first time, that Creech has a viable unjust enrichment claim under *North Carolina* law, which does not require privity of contract. As Defendants pointed out, however, Plaintiff did not raise this argument in opposition to the motion to dismiss, and nothing prevented him from doing so. The Court agrees with Defendants that Plaintiff has waived this argument and cannot now assert a claim of unjust enrichment under North Carolina law. Given that Creech no longer has a viable unjust enrichment claim, he is not a member of this class and cannot fairly and adequately serve as the class representative. *Sosna*, 419 U.S. at 403.

Given that Plaintiff cannot satisfy the requirement of Rule 23(a)(4), the Court OVERRULES Plaintiff's motion to certify an alternative Multi-State Consumer Protection Class, and an Unjust Enrichment Class.

## B.    Nationwide Consumer Protection Law and Express Warranty Classes

Plaintiff seeks certification of a Nationwide Consumer Protection Class based on Defendants' alleged violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Stat. §407.020.1.[4] Plaintiff also seeks certification of an Express Warranty Class comprised of class members from ten states that have adopted the Uniform Commercial Code, allegedly without material modifications.

Defendants argue that Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23(a) or 23(b)(2) with respect to either of these proposed classes.  For the sake of judicial economy, the Court will analyze these two proposed classes together, as did the parties.

### 1.    Rule 23(a) Requirements

The Court turns first to the four requirements set forth in Rule 23(a) — numerosity, commonality, typicality and adequacy of representation.

### a.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  "There is no strict numerical test for determining impracticability of joinder. . . . When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone."  *In re Am. Med. Sys.*, 75 F.3d at 1079.

---

[4] Citing *Perras v. H&R Block*, 789 F.3d 914, 918 (8th Cir. 2015), Plaintiff argues that, because there are sufficient ties between the transactions at issue and the state of Missouri, the MMPA is broad enough to protect all out-of-state class members.

11

In this case, the recall at issue involves over 715,000 defective thermostats. Defendants do not dispute that the numerosity agreement is satisfied for both the Nationwide Consumer Protection Class and the Express Warranty Class. The Court finds that Plaintiff has satisfied the requirement of Rule 23(a)(1) for both of these classes.

### b. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d at 1080 (quotation omitted). That issue must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2251)). "This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Id.* The common answer must relate "to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

Here, Plaintiff seeks class-wide relief under the Missouri Merchandising Practices Act ("MMPA"), Mo. Stat. § 407.020, *et seq.* That statute provides, in relevant part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

Mo. Stat. § 407.020.1. In order to succeed on an MMPA claim, Plaintiff must establish:

> (1) the purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, (4) as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA. §§ 407.020 and 407.025.1.

*Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 701 (E.D. Mo. 2018).

Plaintiff alleges that Defendants violated the MMPA by marketing and selling defective thermostats, making false or deceptive warranty representations, implementing an insufficient recall, and failing to inform consumers at the time they implemented the recall that Defendants were capable of providing them with safe, non-defective and fully-functional thermostats.

Plaintiff also seeks class-wide recovery for breach of express warranty for persons in ten states that have adopted the Uniform Commercial Code, allegedly without material modifications. In order to succeed on this claim, he must prove "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *Prichard Enters., Inc. v. Adkins*, 858 F. Supp. 2d 576, 584 (E.D.N.C. 2012). Plaintiff generally alleges that White-Rodgers expressly warranted that its thermostats would be free from

13

defects for a period of five years, that he and the other class members reasonably relied on this warranty in purchasing the thermostats, and that Defendants breached the warranty by refusing to repair or replace the defective thermostats.

Plaintiff maintains that, with respect to the MMPA and breach-of-express-warranty claims, there are numerous questions of law or fact common to the entire class, given that the thermostats all suffer from a uniform defect and are subject to a uniform 5-year warranty. He further argues that a uniform remedy of providing non-defective, fully-functional thermostats is available to all class members. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (finding commonality requirement satisfied where vehicles had uniform defect and were subject to same warranty, and where there was a common legal question as to whether the warranty was properly read to contain a promise to repair this type of defect); *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87-88 (D. Mass. 2007) (finding commonality requirement satisfied where products were uniformly defective and subject to the same warranty). Plaintiff notes that, as a result of the alleged defect, none of the thermostats affected by the recall can safely use the battery back-up feature.

Other common questions cited by Plaintiff include "whether White-Rodgers omitted and concealed material facts from its communications and disclosures to Plaintiff and Class Members regarding the Inadequate Recall," "whether White-Rodgers adequately warned consumers about the Hazard," "whether White-Rodgers failed to effectively fix the Hazard in the Thermostats," and "whether

White-Rodgers breached the uniform five-year warranty." Doc. #94, PageID##4400-01.

Defendants, however, argue that Plaintiff's proposed classes are too fractured and dissimilar to satisfy the commonality requirement. In *Dukes*, the Supreme Court noted that dissimilarities within the proposed class might "impede the generation of common answers." 564 U.S. at 350 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)). Defendants maintain that the allegedly common questions of whether a uniform defect exists or whether a uniform remedy exists are too generalized to satisfy Rule 23(a)(2). They argue that the precise nature of each class members' claims must be examined, including the nature and extent of the injury that they each suffered.

Defendants contend that, because of how the thermostats are powered, over half of the proposed class members are likely completely unaffected by the alleged defect and the allegedly inadequate recall remedy. Defendants further argue that the class members have materially different claims and injuries depending on whether they participated in the recall. Those, like Mr. Creech, who removed the batteries and applied the sticker are no longer at risk for fire, but no longer benefit from the battery back-up feature. Those who did not participate in the recall and who continue to power their thermostats with the C-wire and the battery backup still face a fire hazard, but retain the battery back-up feature.

Of those who received a "sticker kit," the existence and extent of injury varies. Other distinctions that may affect the claims of individual class members include whether the particular model at issue has a clock, how the consumers acquired the thermostats, whether they knew of the battery back-up feature and relied on it in making their purchase decision, whether any other warranties apply, and whether the consumers received notice of the recall. Finally, Defendants argue that there are numerous individualized defenses, including lack of standing, expired warranties and assumption of risk.

The distinctions cited by Defendants are certainly relevant to the question of the cohesiveness of the class, to be discussed below in analyzing whether certification is warranted under Rule 23(b)(2). In analyzing commonality under Rule 23(a)(2), however, the only question is whether there is one common issue of law or fact that is capable of classwide resolution and that will advance resolution of the litigation. *In re Whirlpool*, 722 F.3d at 852.

The Court finds that Plaintiff has satisfied the commonality requirement of Rule 23(a)(2) for the Nationwide Consumer Protection Class and the Express Warranty Class. Some of the issues capable of class-wide resolution include whether Defendants engaged in conduct that violates the MMPA and whether Defendants breached the five-year warranty by failing to repair or replace the defective thermostats. The answers to these common questions will drive the resolution of this litigation.

### c.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members."  *In re Whirlpool*, 722 F.3d at 852–53.

Plaintiff maintains that his MMPA and breach-of-express-warranty claims are typical of the claims of the other class members.  All class members have uniformly defective thermostats that are subject to the same five-year warranty, and all claims are predicated on White-Rodgers' failure to repair or replace the defective thermostats.  In that sense, by pursuing his own interest in obtaining a non-defective, fully-functioning thermostat, Plaintiff will be advocating the interests of the other class members.

Defendants insist, however, that Plaintiff's claims are not typical of the claims of the vast majority of class members.  They argue that his alleged injury is different than that of the 99% of class members who did not participate in the recall.  Given that Plaintiff has removed the batteries from his thermostats, he is no longer at risk of fire, but he has lost the battery back-up feature.  In contrast, the class members who continue to power their thermostats on a C-wire with a battery back-up are still at risk for fire but retain the benefit of the battery back-up feature.

Those class members who power their thermostats with a C-wire only or battery-only have no fire risk and continue to use the thermostats as they always have.

Defendants note that the Sixth Circuit has held that:

> "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." . . . Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for - under those circumstances - it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members.

*Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (quotations and citations omitted).

In this case, although the injuries suffered by the class members may vary in nature and degree, it cannot necessarily be said that the class encompasses individuals who have "no claim at all to the relief requested." *Id.* Plaintiff's theory is that all of the thermostats subject to the recall are defective, and none can safely be used in the full manner in which they were intended. In this respect, none of the class members received the benefit of their bargain. *See Daffin*, 458 F.3d at 552-53 (holding that, even though not all class members had yet experienced problems, the typicality requirement was satisfied because defendant allegedly breached the warranty by providing uniformly-defective vehicles, causing plaintiff and class members to receive vehicles worth less than vehicles that conformed to the promises contained in the warranty); *In re Whirlpool*, 722 F.3d at 856-57 (holding that, if a design defect is proven, "all class members have

18

experienced injury as a result of the decreased value of the product purchased" and all "were injured at the point of sale.").

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members," and is "based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (quotation omitted). If these requirements are met, "[f]actual variations in the individual claims will not normally preclude class certification." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Here, Plaintiff's claims arise from the same course of conduct and give rise to the same remedial theories as those of the class members. Plaintiff maintains Defendants have violated the MMPA and have breached the express warranty by failing to repair or replace the defective thermostats with non-defective thermostats or to refund the purchase price. Again, the factual distinctions identified by Defendants are relevant to the question of whether the proposed classes are cohesive enough that class certification is warranted under Rule 23(b)(2). However, under the circumstances presented here, those distinctions do not foreclose a finding of typicality. Regardless of factual variations in the nature of the injuries suffered, Plaintiff, by advocating for free repair or replacement for himself, also advocates the interests of all proposed class members.

For the reasons set forth above, the Court finds that Plaintiff has proven that his claims are typical of those of the other class members.

### d.     Fair and Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The court looks to two criteria in determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quotation omitted).

Plaintiff maintains that he has common interests with the class members, and has worked diligently to protect consumers from the fire hazard and to make sure that they get the benefit of their bargain. He also argues that his attorneys have extensive experience prosecuting class actions. Defendants do not challenge the qualifications of counsel, and the Court finds that Plaintiff's counsel is well qualified.

Defendants, however, argue that Plaintiff's interests diverge from large parts of the class. Whereas he is concerned about the economic impact of the allegedly inadequate recall remedy—the loss of the thermostats' battery back-up feature, most class members would likely be concerned with the ongoing fire hazard. Citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997), Defendants maintain that, because Plaintiff no longer faces that particular risk, he has no incentive to pursue safety-based claims. The Court disagrees. Ideally, Plaintiff wants a fully-functioning thermostat that is also safe; he would like to be able to use the battery back-up feature without a risk of fire. If Plaintiff obtains

the class-wide relief that he seeks—repair or replacement of all defective thermostats—this will eliminate both the safety risk and the economic impact of the allegedly inadequate recall remedy. Accordingly, Plaintiff has no conflict of interest with the other class members.

Defendants also argue that Plaintiff is inadequate to represent the interests of those class members whose warranties have expired. Plaintiff notes, however, that the warranty class is defined to include only those consumers who "own or possess Thermostats that are within the applicable warranty period." Doc. #94, PageID##4361.

Finally, Defendants argue that Plaintiff is subject to unique defenses that bear on his adequacy as a class representative. For example, Defendants maintain that Plaintiff is simply mistaken in his belief that the thermostats cannot be operated in battery-only mode. Plaintiff also claims to have relied on advertisements touting the battery back-up feature of the thermostats he purchased. Defendants, however, maintain that this would have been impossible because the battery back-up feature was not mentioned in any marketing or advertising material. In the Court's view, these two unique defenses do not bear significantly on Plaintiff's adequacy as a class representative.

The Court finds that Plaintiff has satisfied his burden of proving that he will fairly and adequately protect the interests of the class members.

## 2. Rule 23(b) Requirements

Having determined that Plaintiff has satisfied all four requirements of Rule 23(a), the Court then turns to the question of whether Plaintiff has proven that class certification is warranted under one of the subsections of Rule 23(b). In the Second Amended Class Action Complaint, Doc. #50, Plaintiff sought class certification under Rule 23(b)(2) *and* 23(b)(3). He sought actual damages and statutory damages along with injunctive and declaratory relief.

In their Motion to Strike Class Allegations from the Second Amended Class Action Complaint, Doc. #53, Defendants vigorously argued that Plaintiff failed to meet the predominance and superiority requirements of Rule 23(b)(3). They also argued that, because Plaintiff's request for monetary relief predominated over his request for injunctive relief, certification was not available under Rule 23(b)(2). The Court ultimately overruled Defendants' Motion to Strike as premature, preferring to decide the class certification issue "only on a fully-briefed motion for class certification, to be filed by Plaintiff at a later date." Doc. #66, PageID#1763.

Perhaps persuaded by Defendants' argument, in the Motion to Strike Class Allegations, that certification under Rule 23(b)(3) was not warranted because he could not satisfy the predominance and superiority requirements of that subsection, Plaintiff has now abandoned all efforts to seek certification under Rule 23(b)(3). His Motion for Class Certification, Docs. ##77, 94, filed after the Court overruled Defendants' Motion to Strike, seeks class certification *only* under Rule

22

23(b)(2), and at oral argument, his attorney expressly disavowed all claims for money damages.

Instead, Plaintiff now seeks declarations that: (1) the thermostats have a uniform hazard; (2) the warranty requires White-Rodgers to repair or replace them with non-defective, fully-functional thermostats; and (3) in the event such thermostats are not available, the warranty requires White-Rodgers to refund the purchase price. Plaintiff also seeks injunctive relief in the form of orders: (1) requiring White-Rodgers to modify the parameters of the recall to include repair or replacement of the thermostats or, in the alternative, to provide full refunds; and (2) requiring White-Rodgers to adequately notify consumers of the fire hazard. Doc. #86, PageID#3017.

To obtain class certification under Rule 23(b)(2), Plaintiff must prove that Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[5]

---

[5] The "corresponding declaratory relief" must, "as a practical matter, control the parties' conduct in the same way that an injunction would." Examples include a declaration that a patent is valid and has been infringed, or that a particular statute is unconstitutional. 5 James Wm. Moore, *Moore's Federal Practice*, § 23.43[3][a] (3d ed.). Courts have sometimes also allowed reformation of contracts as a *remedy* in (b)(2) class actions in the form of a declaration of the rights conferred by a pension plan or insurance policy and an injunction ordering the defendant to conform the text of the plan to that declaration. *Id.* Plaintiff notes that, in *Gooch v. Life Investors Insurance Co. of America*, 672 F.3d 402, 427 (6th Cir. 2012), the Sixth Circuit held that (b)(2) certification was available to obtain a declaration about the meaning of an insurance contract. In *Gooch*, however, that declaration

Defendants argue that certification under Rule 23(b)(2) is inappropriate because: (1) Plaintiff waived his right to seek certification under this subsection; (2) Plaintiff's claim for injunctive relief is a disguised claim for money damages; and (3) Plaintiff cannot satisfy the cohesiveness requirement of Rule 23(b)(2). The Court agrees on all accounts.

### (i)    Waiver

In their Motion to Strike Class Allegations from the Second Amended Complaint, Doc. #53, Defendants argued that Plaintiff's "half-hearted" request for certification under Rule 23(b)(2) should be stricken because his claims for damages predominated over his claims for injunctive relief. Plaintiff completely failed to respond to this argument in his response brief, Doc. #59. In their reply brief, Defendants argued that, in failing to address this argument, Plaintiff had conceded the issue. Doc. #61, PageID#1748. Plaintiff did not seek leave to file a sur-reply. Defendants therefore argue that Plaintiff should be deemed to have waived any request for certification under Rule 23(b)(2). *See Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (holding that failure to respond to argument raised in motion amounts to a waiver of that claim).

---

was a predicate to certification of a damages class under Rule 23(b)(3). *Id.* at 428-29.

Plaintiff's only response to Defendants' argument is that the Court overruled the Motion to Strike Class Allegations as premature.[6] While true, this, of course, does not address the question of whether Plaintiff waived the right to seek certification under Rule 23(b)(2) by failing to respond to Defendants' argument that Plaintiff's claims for damages predominated over his claims for injunctive relief. In the Court's view, Plaintiff has waived the right to seek certification under Rule 23(b)(2). However, even absent a waiver, there are other, more important, reasons why certification under 23(b)(2) is not warranted.

### (ii)    Claim for Injunctive Relief is a Disguised Claim for Money Damages

In his Second Amended Class Action Complaint, Plaintiff seeks only "actual damages" on his breach-of-express-warranty claim. Doc. #50, PageID#599. On his MMPA claim, he seeks "actual damages, reasonable attorney's fees and other equitable relief as the Court may deem necessary or proper." *Id.* at PageID#605. Moreover, Plaintiff invokes this Court's diversity jurisdiction under 28 U.S.C.

---

[6]    At oral argument, Plaintiff's counsel noted that, although her response to the Motion to Strike Class Allegations does not specifically mention 23(b)(2), it does refer to a "modification of the insufficient Recall," Doc. #59, PageID#890, and to the uniform remedy of replacing the defective thermostats, *id.* at PageID#892. These brief references, however, occurred in the context of her discussion of the predominance and superiority requirements of Rule 23(b)(3). She never directly responded to Defendants' argument that certification under Rule 23(b)(2) was not warranted.

§ 1332(d)(2) by alleging that the matter in controversy exceeds $5 million. *Id.* at PageID#582.[7]

Defendants urge the Court to reject Plaintiff's attempt to obtain 23(b)(2) class certification by recasting his claims for money damages as a request for injunctive and declaratory relief. They maintain that Plaintiff's proposed injunctive remedy—repair or replacement of the thermostats, or a full refund of the purchase price—is the functional equivalent of a claim for money damages. *See Daffin v. Ford Motor Co.*, C-1-00-458, 2004 WL 5705647, at *5 (S.D. Ohio July 15, 2004), aff'd, 458 F.3d 549 (6th Cir. 2006) (rejecting plaintiff's attempt to "convert the nature of the action in the course of moving for and supporting class certification by (1) merely asserting that she primarily wants a declaratory order and (2) offering to drop any requests for damages that would hinder certification.").

As Judge Dlott noted in *Daffin*, Rule 23(b)(2) grew out of civil rights suits. *Id.* This subsection of Rule 23 has also been used to certify classes in cases involving systemic discrimination or systemic violations of prisoners' rights, voting rights, due process rights, First Amendment rights, rights to government benefits, and medical monitoring. 5 James Wm. Moore, *Moore's Federal Practice*

---

[7] The Second Amended Class Action Complaint also includes a separate Count for injunctive and declaratory relief, seeking an order requiring Defendants to take corrective action, and a declaration that all of the thermostats subject to the recall are defective, necessitating their repair or replacement. Doc. #50, PageID##607-08.

§ 23.43[b] and [c] (3d ed.). *See also Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 736 (S.D. Fla. 2007) ("23(b)(2) class actions were designed for civil rights cases, or situations where the class of plaintiffs had a cohesiveness that pre-existed the lawsuit.").

Although class certification under Rule 23(b)(2) is not specifically prohibited for other kinds of claims, the Court must be mindful of the fact that injunctive relief is typically ordered only when there is no adequate remedy at law. *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002). Notably, money damages are the usual remedy for the claims on which Plaintiff seeks 23(b)(2) class certification. *See, e.g.,* Mo. Stat. § 400.2-714.2 ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . "); N.C.G.S. § 25-2-714(2) (same). As for Plaintiff's consumer protection claim, although the MMPA also allows the court, in its discretion, to award equitable relief, the primary remedy for a violation of the statute is "actual damages." Mo. Stat. § 407.025.1.

Plaintiff's claim is that he and his fellow class members did not get what they paid for or what was warranted—a fully-functional thermostat that does not pose a fire hazard. As noted in *Daffin*, when the injury suffered is economic in nature, it "is most logically rectified by money damages." *Daffin*, 2004 WL 5705647, at *5. Here, given that Plaintiff and the other class members have an

adequate remedy at law, injunctive relief under Rule 23(b)(2) is not warranted. Nor is "corresponding declaratory relief."

In *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003), the Fifth Circuit held that the district court abused its discretion in certifying a Rule 23(b)(2) class on claims of fraudulent concealment and breach of express warranty. The court noted that the "ordinary relief" for these claims "would be money damages, not injunctive relief." *Id.* at 553-54. The court found that the class members should receive the protections of notice and opt-out benefits, as would be provided by Rule 23(b)(3). It further found that defendants should not "be forced to pay what is effectively money damages, without the benefit of requiring plaintiffs to meet the rigorous Rule 23(b)(3) requirements." *Id.* at 554.

Likewise, in *Phillips v. Ford Motor Co.*, 14-cv-02989, 2016 WL 7428810, at *24 (N.D. Cal. Dec. 22, 2016), the court refused to certify a 23(b)(2) class seeking an injunction requiring Ford to repair or replace the defective power steering system in two makes of cars because plaintiff had an obvious adequate remedy at law. *See also Daffin*, 2004 WL 5705647, at *6 (noting that automobile defect cases are generally not certified under 23(b)(2)).

Defendants further argue that, for policy reasons, the Court should avoid ordering a modified recall of the thermostats. They note that the Consumer Product Safety Commission ("CPSC"), the federal agency charged with overseeing the safety of consumer products, 15 U.S.C. § 2053, specifically approved White-Rodgers' recall notice and the recall remedy. Defendants urge the Court to avoid

28

substituting its own judgment for that of the CPSC. *See, e.g., Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 266-67 (D.D.C. 1990) (refusing to certify 23(b)(2) class seeking recall of defective cars because an adequate remedy at law existed and the court wanted to "avoid entanglement with a regulatory scheme" granting power to the Department of Transportation to oversee vehicle recalls).

For all of these reasons, the Court rejects Plaintiffs' attempt to recast his breach-of-express-warranty and MMPA claims as claims for injunctive and declaratory relief. Class certification of these claims is not appropriate under Rule 23(b)(2).

### (iii)   Cohesiveness

Even if injunctive or declaratory relief were *generally* appropriate in this case, Plaintiff cannot satisfy the "cohesiveness" requirement of Rule 23(b)(2). *See Romberio*, 385 F. App'x at 433 (discussing the "well-recognized rule that Rule 23(b)(2) classes must be *cohesive*."). Class certification is appropriate under 23(b)(2) only if Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As Defendants point out, in a (b)(2) class, class members have no right to opt out. Accordingly, to minimize due process concerns, the class must be homogenous. "The disparate factual circumstances of class members may prevent a class from being cohesive and, therefore, make the class unable to be certified under Rule 23(b)(2). *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (internal quotation omitted).

Here, Plaintiff has failed to prove that Defendants acted or refused to act on grounds that apply generally to the entire class. Yes, Defendants sold defective thermostats and issued a voluntary recall to all class members. Yet the act complained of is Defendants' refusal to repair or replace the defective thermostats or to refund the purchase price. This refusal, however, applies only to that very small percentage of class members who responded to the recall notice and received a sticker kit.

Moreover, the proposed classes in this case are so fractured that no single injunction or corresponding declaratory relief would be appropriate for the proposed classes as a whole. Not all proposed class members are equally affected by Defendants' alleged wrongdoing. It appears that most of the proposed class members would obtain little or no benefit from an order directing Defendants to repair or replace their defective thermostats.

As Defendants have repeatedly pointed out, although the recall notice covers four models of thermostats, the fire hazard exists only for those thermostats that are powered by a C-wire with a battery back-up. Defendants estimate that less than half of the thermostats that were subject to the recall are powered by a C-wire with a battery back-up. Doc. #82, PageID#2816. Accordingly, the proposed classes appear to consist mainly of consumers whose thermostats pose absolutely no risk of fire.

Class members who power their thermostats with a C-wire and a battery back-up, but who did not participate in the recall, are still at risk for fire, but they

retain the thermostats' battery back-up functions. For the class members like Mr. Creech, removal of the batteries completely eliminates the risk of fire. However, it also results in the loss of the thermostats' battery back-up features.

Individuals who remove the batteries cannot see the temperature display during a power outage. Beyond that, the significance of the loss of the battery back-up feature ranges from non-existent to *de minimis* depending on the circumstances of the individual class members. For example, only two of the four models of thermostats that are subject to the recall have clocks. These clocks must be manually reset after each power outage. This is likely more burdensome on those consumers who program their thermostats to adjust the temperature at certain times of the day and night.

In short, the fractured nature and extent of the injuries suffered by the class members as a result of Defendants' alleged wrongdoing in this case does not lend itself to a "one size fits all" injunctive remedy. Although the class members all possess defective thermostats, the injunctive relief contemplated by Plaintiff would have no real benefit for the vast majority of them.

Moreover, in determining whether a proposed (b)(2) class is cohesive, the court must consider what is required to establish individual claims. *Romberio*, 385 F. App'x at 429. The "reasonable reliance" element of a breach-of-warranty claim is an individualized determination that typically does not lend itself to class treatment. *See, e.g., Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 97 (W.D. Mo. 1997) (noting that "the content of representations made and the

31

role those representations played in individual purchasing decisions are issues that will vary from person to person.") This is particularly true here, where the class members acquired their thermostats in a wide variety of factual scenarios.

For all of these reasons, the Court agrees with Defendants that Plaintiff's proposed classes are not cohesive enough to warrant class certification under Rule 23(b)(2).[8]

## IV. Conclusion

Although Plaintiff has satisfied the requirements of Fed. R. Civ. P. 23(a), he has failed to establish that class certification is warranted under Fed. R. Civ. P. 23(b)(2). Accordingly, the Court OVERRULES Plaintiff's Motion for Class Certification, Docs. ##77, 94.[9]

With respect to Plaintiff's individual claims, the parties are directed to file a Joint Revised Rule 26(f) Report no later than May 6, 2019. The Court will convene a conference call to set a trial date and other deadlines on May 13, 2019, at 4:30 p.m. EDT.

---

[8] Given that the Court has concluded that Rule 23(b)(2) class certification is not warranted, it need not address the question of whether the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court of California*, —U.S.—, 137 S. Ct. 1773 (2017), applies in federal court or applies to class actions. Likewise, the Court need not address the question of whether the MMPA applies extra-territorially or whether choice-of-law issues would preclude class certification.

[9] The Court has determined that any further motion for class certification would be futile. Even if Plaintiff were to seek certification of a much narrower class under Fed. R. Civ. P. 23(b)(3), he would be unable to satisfy the predominance and superiority requirements of that subsection of the Rule.

Date: April 18, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE